IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

—————

MARY FRANCES DURAN,

        Plaintiff,

v.                                            No. CIV 97-1598 BB/RLP

STATE OF NEW MEXICO DEPARTMENT
OF LABOR,

        Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court for consideration of Defendant's motion for summary judgment (Doc. 63). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the summary-judgment motion will be granted, and this case dismissed.

Plaintiff was employed by Defendant for many years, prior to her voluntary retirement in 1999. This lawsuit arises out of four instances in which Defendant promoted other individuals rather than Plaintiff, a series of disciplinary actions taken against Plaintiff, and a number of performance evaluations that Plaintiff claims were unfair and inaccurate. Plaintiff originally claimed that the failures to promote, disciplinary actions, and wrongful performance evaluations were motivated by age discrimination on the part of Defendant. After she filed this lawsuit, however, the Supreme Court decided *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000), and held that Age Discrimination in Employment Act ("ADEA") claims may not be maintained against a state without that state's consent. Plaintiff's claim was therefore dismissed, but she was given permission to amend her complaint. In the amended complaint, Plaintiff maintained that Defendant's actions were motivated

by gender and race discrimination, as well as retaliation for several EEOC complaints Plaintiff filed. Defendant has moved for summary judgment on all claims.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion in light of these standards.

**Factual Summary[1]**

Plaintiff's answers to Defendant's interrogatories allege a long history of unfair treatment by Defendant. In 1982, she received a "satisfactory" rating in her performance evaluation. Dissatisfied

---

[1]The factual summary is based on undisputed facts or, where the facts are disputed, is based on the facts most favorable to Plaintiff. The facts are gleaned from the voluminous documents submitted as exhibits by both parties. The Court notes that Plaintiff submitted a large stack of documents, a number of which are duplicative, and none of which are highlighted in any way. According to local rule, the portions of an exhibit that a party wishes to call to the Court's attention must be highlighted. D.N.M. Local Civil Rules, Rule 10.6. The Court is not required to sift through the exhibits to determine what portion of the exhibits might be relevant to Plaintiff's case, especially given the voluminous nature of the exhibits submitted in this case. Plaintiff's counsel is instructed to comply with this rule in future cases, as failure to do so could well result in the exhibits simply being disregarded.

with that rating, she requested and received a transfer to a different division.  Plaintiff also claims that, beginning in 1982, a number of unspecified, unfair disciplinary actions were taken against her.  Later, in 1987, Plaintiff again received a "satisfactory" rating in her performance evaluation, an evaluation she again claimed was unfair and unjustified.  The same thing occurred in 1992, and again in 1993.  Also in 1993, in August, Plaintiff was not selected for a position as Student Labor Specialist.  She filed an EEOC complaint in December 1993, alleging age discrimination as Defendant's motivation for selecting a younger candidate for the position.  Plaintiff also formally challenged her 1993 evaluation, and was given access to over 1700 pages of documents to review and copy, in support of her challenge.  The overall evaluation was not changed.

The specific events underlying this lawsuit began in March 1994, when Plaintiff was not selected for a promotion to the position of Management Analyst.  The primary duties of this position were to supervise the work of the Unemployment Insurance ("UI") division to ensure compliance with federal standards.  (Exh. P, Defendant's MSJ)  A working knowledge of the entire UI system was a stated preference for the position.  (*Id.*)  Plaintiff was interviewed for the position, but was not among the top three candidates recommended by the interviewer.  (*Id.*)  The person selected for the position, a Black female, had been a supervisor in the UI division for over ten years, and had worked in other positions in the UI division prior to that.  (Exh. R, Def. MSJ)  By contrast, Plaintiff had no recent experience in the UI division, having spent the previous twelve years (approximately) in the Employment Services ("ES") division.  (*Id.*)  Plaintiff had not worked in the UI division since the late 1970's and early 1980's.  (*Id.*)   Also, the interviewer who narrowed the field to three candidates provided uncontradicted testimony, by affidavit, that he was unaware of Plaintiff's 1993 EEOC claim at the time he interviewed the candidates and selected the top three for recommendation.  (Exh. P).

In October 1994, Plaintiff was not selected for a promotion to the position of Employer Interviewer III, in the ES division.  Since Plaintiff at the time held the position of Employment Interviewer II, she was much more qualified for this position than for the Management Analyst position.  The Interviewer III position was a supervisory position, responsible for the direct supervision of seven subordinate employees. (Exh. V, Def. MSJ)  Plaintiff testified at her deposition that she had no official supervisory experience during her tenure with Defendant. (Exh. U, Def. MSJ)  She did claim that her experience as a teacher, apparently in the early 1970's, should count as supervisory experience.  (*Id.*)  She also pointed to experience, in the late 1970's, unofficially supervising students who were participating in a program run by Defendant, and to a supervisory position with the telephone company in 1953.  (*Id.*)  Plaintiff was not among the top three candidates recommended for the position. (Exh. V)  The individual selected for the position, a Hispanic female, had eight years of supervisory experience, supervising 20-30 people, prior to coming to work with Defendant.   Before she was promoted she held the same position as Plaintiff, Employment Interviewer II.

In November 1994, shortly after Defendant rejected Plaintiff's application for promotion to the Employment Interviewer III position, Plaintiff wrote a memorandum disputing her 1994 performance evaluation.  (Duran memo dated Nov. 30, 1994, marked "A81" in Plaintiff's packet of exhibits)  She had again received a "satisfactory" overall rating.  As was the case with her previous evaluations, and as would be the case again in future years, her main contention was that the statistics used to evaluate her production were erroneous.  She contended that credit for job referrals was unfairly distributed, with a few people in her department receiving credit for referrals they had not made. According to Plaintiff, this caused her statistics to be unfairly skewed.  Plaintiff also disagreed with Defendant's requirement that she refer two clients per week to employment counseling,

4

contending there were not enough clients requesting such services.  Plaintiff's "satisfactory" rating was not changed.

During this same period of time, from October 1994 through December 1994, Plaintiff was disciplined several times, in what she considered to be an unfair manner.  In late October, Plaintiff received a warning letter for taking a lunch period longer than one hour.  Defendant[2] maintained Plaintiff had been gone for one hour and 45 minutes; Plaintiff claimed it was one hour and a half.  Plaintiff also claimed she had received permission to take a long lunch to attend a Kiwanis luncheon, as long as she skipped her usual fifteen-minute breaks; Defendant disagreed, saying that arrangement had been canceled because Plaintiff had abused it, taking longer lunches than the hour-and-a-half she had agreed to.  In November, Plaintiff was not allowed to attend the Governor's Career Development Conference.  According to Defendant, the reason for this was that priority in attendance was given to those employees who had not attended this conference within the last two years, and Plaintiff had attended in 1992.  Finally, in December, Plaintiff and a co-employee were docked one hour of pay for attending a two-hour Employees Club holiday luncheon.  Defendant's reason for this discipline was that Plaintiff and the co-employee had failed to notify their supervisor that they were attending the luncheon and taking an extra hour for lunch.  Although Plaintiff claimed that the memorandum granting all employees permission to attend the luncheon did not require that supervisors be notified, Defendant did not rescind the discipline imposed.  Defendant stated that common sense would indicate that employees in Plaintiff's position, who are required to provide direct services to the public, must make arrangements with their supervisors prior to being absent for an extended period of time.

---

[2]In discussing the disciplinary actions taken by Plaintiff's supervisors, for ease of reference the Court will refer to the relevant actor as "Defendant" even though different supervisors took different actions.

Following these eventful months at the end of 1994, Plaintiff filed another EEOC complaint, in February 1995.  Nothing further occurred, as far as this lawsuit is concerned, until November 1995, when Plaintiff contested her "satisfactory" rating in her 1995 performance evaluation, on grounds similar to those she had raised with regard to previous evaluations.  Her "satisfactory" rating remained unchanged.  It is also worthy of note that none of Plaintiff's "satisfactory" ratings had any effect on her pay raises or salary -- that is, she received the same raises she would have received if her evaluations had been more favorable.

In February 1996, Plaintiff was turned down for another promotion, for the position of Area Director.  A panel of three individuals interviewed the candidates for the position and recommended a Black woman.  (Exh. PP, Def. MSJ)  Plaintiff has pointed to no evidence indicating that any of the panel members were aware of her 1993 or 1995 EEOC claims.  Also, the Area Director supervises an entire department, with approximately 50 subordinate employees.  (Exh. SS, Def. MSJ)  As noted above, Plaintiff had no supervisory experience with Defendant, and the little supervisory experience she had prior to working for Defendant had taken place almost twenty years before she applied for the Area Director position.  By contrast, the individual chosen for the position had been an Assistant Area Director for sixteen years, and an Area Director IV for  a few months, prior to being selected for the position.  Thus, her supervisory experience vastly exceeded Plaintiff's, and was directly relevant to the Area Director position.

After the Area Director position was filled, Plaintiff applied for the now-vacant position as Assistant Area Director.  That promotion also went to a different applicant.  The Assistant Area Director position is a supervisory position, requiring the Assistant to help the Area Director in supervising the office, train and supervise subordinate employees, and develop budget and activity plans.  (Exh. UU, Def. MSJ)  The individual selected for the position, a Hispanic female, was

6

supervising nine to twelve employees in the UI division prior to her selection. As pointed out above, Plaintiff's supervisory experience at the time she applied was minimal.

In October 1996, Plaintiff filed another EEOC claim, arising out of Defendant's failure to promote her to Area Director or Assistant Area Director. Shortly thereafter, in November 1996, she again challenged the "satisfactory" rating she had received in her 1996 performance evaluation. Plaintiff then filed this lawsuit in 1997, alleging age discrimination. The case was held in abeyance pending the Supreme Court's decision in *Kimel*. As discussed above, following that decision, the age discrimination claim was dismissed and Plaintiff amended her complaint to allege gender and race discrimination, as well as retaliation.

**Retaliation Claims**

To establish a prima facie case of unlawful retaliation under the familiar *McDonnell Douglas* test, Plaintiff must prove: (1) she engaged in protected opposition to discrimination; (2) Defendant took adverse action against her contemporaneously or subsequent to the protected activity; and (3) there is a causal connection between such activity and Defendant's actions. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993). It is clear that Plaintiff has met the first two requirements for at least some of the actions taken by Defendant, since her first EEOC claim was filed in December 1993 and the events forming the basis of her complaint all occurred after that date.[3] The more difficult question is whether she has adduced sufficient evidence to establish, for summary-judgment purposes, a causal connection between her EEOC complaints and Defendants' actions.

In the absence of direct evidence of retaliation, which is rarely present and is not present in this case, one means of making a prima facie showing is to establish that an adverse action closely

---

[3]As discussed below, some of the actions taken by Defendant do not rise to the level of an actionable adverse employment action, meaning Plaintiff has not met the second *Williams* requirement for those particular actions.

followed the protected activity. However, unless the action is very closely connected in time to the protected conduct, Plaintiff must present additional evidence beyond temporal proximity to establish causation. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). According to the Tenth Circuit, a lapse of three months between the protected activity and the employer's action is too long a period of time to allow an inference of causation. *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).[4] With this in mind, the Court will analyze each of the alleged instances of retaliation, to determine whether the proximity-in-time requirement has been met and, if not, whether other evidence of causation has been presented.

As to the four instances of failure to promote, only one, the March 1994 promotion, arguably took place within three months of protected activity by Plaintiff. The first EEOC claim was filed on December 20, 1993, and the failure to promote occurred at some time in March, either just under three months after the EEOC claim or just over that threshold. For purposes of this opinion, the Court will assume the temporal-proximity requirement has been met as to this promotion. However, even where this requirement has been met, the Tenth Circuit requires one more showing from Plaintiff--that the person making the employment decision knew of the protected conduct at the time the decision was made. *See Williams*. If the decision-maker did not know about the protected activity, it would not be reasonable to allow an inference that the decision was motivated by a desire to retaliate. In this case, the individual who interviewed the candidates for the Management Analyst position, and narrowed the field to three candidates, and thereby excluded Plaintiff, submitted an affidavit testifying he did not know about Plaintiff's EEOC claim at the time he took these actions. (Exh. P, Def. MSJ) Plaintiff has submitted no evidence contradicting the claim of lack of knowledge.

---

[4]The Court recognizes the Tenth Circuit has not definitively established three months as a cut-off date for retaliation claims, but will use that time period as a useful guideline.

Therefore, under *Williams*, Plaintiff has failed to make a prima facie showing regarding the March 1994 promotion.

The other three promotions about which Plaintiff complains occurred nowhere near in time to any protected activity--the October 1994 promotion was ten months after the 1993 EEOC claim, and the February 1996 and July 1996 promotions took place one year and eighteen months, respectively, after the February 1995 EEOC claim. With respect to those promotions, therefore, Plaintiff was required to present other evidence of retaliatory motive. The Court can find no such evidence in the record. For example, there is no evidence that any of the decision-makers, such as the panel that recommended candidates for the Area Director position, were upset by Plaintiff's EEOC claims or even knew about them. The Court must therefore find that Plaintiff has failed to make a prima facie showing of retaliation with regard to any of the promotions.[5]

Plaintiff also maintains that the disciplinary actions taken by Defendant were retaliatory. As discussed above, all of these disciplinary actions took place in October, November, or December of 1994. They therefore occurred a minimum of ten months after Plaintiff's December 1993 EEOC complaint, far beyond the three-month time span discussed in *Richmond,* and there is no other evidence of retaliatory intent on Defendant's part. Furthermore, with respect to the disciplinary actions consisting of the warning letter for an over-long lunch hour, and the refusal to allow Plaintiff to attend the Governor's Conference, the Court finds these do not rise to the level of a materially adverse employment action that may be the basis of a Title VII claim. There is no evidence that the warning letter or inability to attend the Governor's Conference in any way affected Plaintiff's

---

[5]The Court notes that even if a prima facie showing had been made, Defendant proffered non-retaliatory explanations for all the promotions. As discussed in the discrimination section of this opinion, no showing has been made that these explanations were pretexts for either retaliation or discrimination, and summary judgment would therefore be appropriate on that ground as well.

employment, for example by leading to future discipline or preventing future advancement. Therefore, these disciplinary actions did not sufficiently alter Plaintiff's compensation, terms, conditions, or privileges of employment, to constitute an adverse employment action. *See Lee v. New Mexico State University Bd. of Regents*, 102 F.Supp.2d 1265, 1274-75 (D.N.M. 2000) (discussing adverse actions that can be basis of Title VII claim).[6]

The remaining adverse actions that were supposedly retaliatory are the performance evaluations conducted in late 1994, 1995, and 1996. Only one of these, the November 1996 evaluation, occurred shortly after Plaintiff had engaged in protected activity (the October 1996 EEOC complaint). No prima facie showing of retaliation has been made, therefore, for the 1994 and 1995 evaluations. With respect to the 1996 evaluation, as was the case with all the other evaluations, Plaintiff received a "satisfactory" rating. A question arises, therefore, as to whether an evaluation resulting in such a rating can be considered an adverse employment action under Title VII. The answer is no, unless the evaluation can be shown to have materially affected Plaintiff's employment. *See Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999) (lowered evaluation ratings did not establish adverse employment action, where employee received raises despite lowered ratings); *Smart v. Ball State Univ.,* 89 F.3d 437, 442 (7th Cir. 1996) (negative performance evaluations alone are not adverse employment actions); *Meredith v. Beech Aircraft Co.*, 18 F.3d 890, 896 (10th Cir. 1994) (satisfactory evaluation, without explanation why it might be considered negative evaluation, and without any evidence of adverse action relating to the evaluation, was not actionable adverse employment action). It was therefore incumbent on Plaintiff to demonstrate how the 1996 evaluation

---

[6]Given Plaintiff's failure to adduce any evidence of retaliatory intent, the Court need not decide whether the one hour of leave without pay assessed against Plaintiff, for attending the Employee Club holiday luncheon without notifying her supervisor first, is sufficiently severe enough to rise above the *de minimis* level and be actionable under Title VII.

materially impacted her employment.  Since there has been no evidence that the 1996 evaluation had any effect on any decision by Defendant concerning Plaintiff, she has failed to meet this burden.[7] Based on the foregoing discussion, Plaintiff has failed to make out a prima facie case with respect to any of the evaluations.

For the reasons discussed above, summary judgment will be granted on all of the retaliation claims raised by Plaintiff.

**Discrimination Claims**

Plaintiff maintains that each and every employment action discussed above was motivated by gender or race bias, or both.  The Court will first discuss the failure-to-promote claims.  To make a prima facie showing of discriminatory failure to promote, Plaintiff must show four things:  (1) she belongs to a racial minority or protected gender; (2) she applied and was qualified for the promotion; (3) despite her qualifications, she was rejected; and (4) the position remained open, or a different individual was selected for the position.  *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 796-97 (10th Cir. 1993), *overruled on other grounds*, *Buchanan v. Sherrill*, 51 F.3d 227 (10th Cir. 1995).  As a Hispanic female, Plaintiff meets the first requirement, and there is no dispute that

---

[7]For example, there was no evidence that Plaintiff's 1996 evaluation, or any of her other evaluations for that matter, caused her to receive a lower raise than she might have if she had received a higher overall rating.  Furthermore, all of the promotion decisions about which she complains had been taken prior to her 1996 evaluation, so there is no possibility her 1996 evaluation affected Defendant's decisions with respect to those promotions.

she meets the other requirements either.[8]   Therefore, the Court moves to the next phase of the *McDonnell Douglas* framework.

As justification for selecting individuals other than Plaintiff for the promotions, Defendant has argued in each instance that a better-qualified  employee was selected for promotion.  Given these race-and-gender-neutral explanations, Plaintiff was required to produce evidence tending to show that the explanations were pretexts for discrimination.  In each instance, Plaintiff has failed to do so.  The first promotion denied Plaintiff was for the Management Analyst position.  As discussed in the factual summary, this position required expertise in UI issues, and the person selected for the position had extensive and recent experience in the UI division, including supervisory experience.  Plaintiff had no recent UI experience.  In support of her contention that she was the better-qualified candidate, Plaintiff argues she had a master's degree and was therefore better-educated than the selected candidate.  Plaintiff does not, however, provide any facts indicating that a master's degree was a necessary qualification for the position, or should override the selected candidate's extensive experience in the very field the Management Analyst needed to be familiar with.  Plaintiff has therefore failed to introduce sufficient evidence to raise a factual issue as to whether the selection of the other candidate was a pretext to allow Defendant to discriminate against Plaintiff.  *See Hooks*, 997 F.2d at 798 (plaintiff's conclusory allegations that he was the better candidate insufficient to avoid summary judgment, where evidence was that selected individual was equally qualified as plaintiff, and had experience more relevant to the position for which he was selected).

---

[8]One of Defendant's briefs contains a suggestion that, because other Hispanic or minority women were selected for the positions, Plaintiff cannot meet her initial burden.  This suggestion is contrary to Tenth Circuit authority.  *See Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999) (fourth requirement of prima-facie-showing test is met if plaintiff shows someone was hired to replace him; not required to prove that person hired was member of different racial or gender group than plaintiff).

The next promotion denied Plaintiff was the position of Employment Interviewer III. This position, as discussed above, was a supervisory position, and Plaintiff had little formal supervisory experience. As an Employment Interviewer II, she had an equivalent position to the individual selected, who was also an Employment Interviewer II. However, the person selected had eight years of experience, prior to becoming employed with Defendant, supervising 20 to 30 individuals. Plaintiff has failed to present any evidence indicating the preference for a person with extensive supervisory experience was actually a pretext for race or gender bias. Her task would be especially difficult in this case, where the individual selected for promotion was a Hispanic female, as is Plaintiff. Although the selection of a Hispanic female did not preclude Plaintiff from making a prima facie showing of discrimination, it is certainly relevant in the pretext phase as evidence that Defendant's proffered explanation for its choice was not a pretext for discrimination. Plaintiff again argues that her superior education made her a better candidate for the Interviewer III position. As with the Management Analyst position, however, the Court cannot say that Defendant's preference for a candidate with extensive supervisory experience, for a supervisory position, over a candidate with a superior education, is evidence of pretext. The Court therefore holds that no material fact issue has been raised as to the pretext question, for the Interviewer III position.

The pretext question concerning the other two promotions can be dealt with quickly. Both the Area Director and Assistant Area Director positions involved even more supervisory responsibility than the Interviewer III position. Defendant selected individuals who had extensive supervisory experience for these positions, in contrast to Plaintiff's lack of such experience. For the same reasons as those discussed above, the Court cannot find this preference for supervisory experience was a pretext for discrimination of any kind.

13

As to the discipline imposed on Plaintiff in the fall of 1994, the *McDonnell Douglas* test is slightly different than for failure-to-promote claims.  A prima facie case of disparate discipline may be established if Plaintiff proves that (1) Plaintiff is a member of a protected class; (2) Plaintiff was disciplined by Defendant;  and (3) Defendant imposed the discipline under circumstances giving rise to an inference of discrimination.  *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir.2000). The Court notes, however, that to be actionable under Title VII, the allegedly disparate discipline imposed must still rise to the level of an adverse employment action.  The Court has already pointed out that the warning letter and the refusal to allow Plaintiff to attend the Governor's Conference do not rise to that level.  The remaining instance of discipline, the imposition of one hour of leave without pay, may be *de minimis* and, therefore, not actionable under Title VII.  *See, e.g.*, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 930 (6th Cir. 1999) (requiring employee to work at home while recovering from surgery, and disallowing computer expenses previously approved, were not materially adverse employment actions).  However, since there was a loss of pay, even though slight, the Court will assume for purposes of this opinion that the one-hour leave without pay would be actionable under Title VII, if it was motivated by an intent to discriminate.

As to the leave without pay, Plaintiff has met the first two requirements of the test set out above.  One of the ways the third prong may be met is by attempting to show that the employer treated similarly situated employees differently.  *Jones.*  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 104 (10th Cir.1997) (quotation omitted).

Plaintiff points to the fact that other employees of Defendant were still at the Employees Club luncheon when she left, and maintains they were not disciplined as she was. This evidence does not raise an inference of discrimination, for several reasons. First, it is undisputed that Plaintiff did not receive permission from her supervisor to attend the luncheon and be gone from her desk for an extra hour. She has made no showing that other employees at the luncheon were similarly situated, in that they also failed to notify their supervisors of their plans to be unavailable for a longer period of time than usual. Second, Plaintiff has submitted no evidence indicating the racial or gender-based makeup of the group of employees who were still at the luncheon when she left. There is therefore no evidence that non-Hispanics, or males, were treated more favorably than Hispanics or females with respect to the luncheon. So far as this Court has been apprised, even if Plaintiff and her co-worker were treated unfairly by their supervisor with respect to the luncheon, there is no evidence the treatment was based on their race or gender. In the absence of such evidence, Plaintiff has failed to raise a genuine issue of fact as to the discriminatory nature of the leave-without-pay discipline. *See Jones*.

Plaintiff's final allegations of discrimination concern the allegedly unfair and erroneous performance evaluations in late 1994, 1995, and 1996. As discussed in the retaliation section, these evaluations, all of which were "satisfactory" overall, and none of which deprived Plaintiff of any raises, may be considered adverse employment actions only if they had a negative impact on Defendant's decisions concerning Plaintiff's employment. Plaintiff has pointed to no evidence indicating this is the case. For example, there is no evidence that the decisions concerning her requests for promotion might have been different if her evaluations had been higher than "satisfactory." While there is some indication in the record that "job performance" and "quality of service" were factors considered in making promotion decisions, *see, e.g.,* Exh. P, Def. MSJ, Plaintiff

has presented no evidence tending to show that more favorable evaluations would have impacted the promotion decisions for the four promotions at issue in this case.[9]  Therefore, Plaintiff has failed to raise a genuine issue of fact concerning the "adverse employment action" requirement of the *McDonnell Douglas* test.

If it were determined that Plaintiff had established a prima facie case of discrimination regarding the evaluations, Defendant would still be entitled to summary judgment on this issue. Plaintiff has presented no evidence tending to show that Defendant's "satisfactory" evaluations of her performance were motivated by gender or race bias.  As discussed above, Plaintiff repeatedly received "satisfactory" ratings in her evaluations, beginning in 1982 and continuing through 1996.  These ratings were handed out by various supervisors, including a non-Hispanic female, a Hispanic male, and a Hispanic female.  Plaintiff's main complaint about her evaluations, which was repeated year after year, was that her performance statistics were too low in comparison to the statistics of other employees and of the department as a whole.  In her deposition, however, Plaintiff admitted she had no evidence that the information giving credit for job hires to other employees had been falsified; instead, she relied on her conclusory opinion to that effect.  (Exh. AAAA, Def. MSJ)  Plaintiff stated that members of one supervisor's "clique" were given preference when credit was being distributed for the job hires.  (*Id.*)  Plaintiff did not identify the members of this clique, and there is no evidence that the clique was created for purposes of gender or race discrimination.[10]  *See Foster v. Dalton*, 71

---

[9]As discussed above, the main criterion for three of the four positions was supervisory experience, and the Management Analyst position required someone with extensive knowledge of the UI program.  There is no evidence that having higher evaluations would have allowed Plaintiff to overcome her shortcomings in these areas.

[10]In fact, the only information the Court has been able to glean from the record, concerning the individuals who allegedly received preferential treatment in their performance statistics, is that one individual may have been a Black female.

F.3d 52, 56-57 (1st Cir. 1995) (disparate treatment due to cronyism does not violate Title VII). Finally, this allegation of falsification of credits applies to only one of the supervisors, Mr. Serda, who rated Plaintiff's performance as "satisfactory." With respect to the latest supervisor, the Hispanic woman who rated Plaintiff in 1995 and 1996, Plaintiff argued only that she should be rated more for quality of service than quantity.

Plaintiff makes much of the fact that when she requested documentary proof regarding Defendant's statistics, she often was unable to obtain it. Even when she obtained access to such documents, however, Plaintiff apparently found no information that would give rise to an inference of race or gender bias. Following the 1993 evaluation, Plaintiff copied over 1700 pages of documents in support of her challenge to her "satisfactory" rating. Plaintiff has not indicated what information she uncovered as a result of this effort. As to the subsequent evaluations, if Plaintiff suspected gender-or-race-based skewing of the statistics, she could have investigated the matter by interviewing the other individuals who were employed in her department at the time, to determine whether they had any information to support her claim. Instead, what has been submitted to the Court is the following: (1) Plaintiff's allegations that her statistics, and her evaluations as a whole, were incorrect, and that every supervisor who evaluated her was wrong; (2) Plaintiff's allegations that she was deprived of the documents necessary to prove the statistics were incorrect; (3) no information concerning similarly-situated employees' evaluations; and (4) no information tending to show that the evaluations, if incorrect or unfair, were the product of gender or race bias. This is not a sufficient showing to raise a genuine issue of material fact as to whether Defendant's evaluations of Plaintiff were discriminatory. Even if Plaintiff's disagreements with her supervisors' attempts to evaluate her have merit, the purpose of Title VII is not to remedy every workplace disagreement between employees and their supervisors. *See EEOC v. Flasher Co.*, 986 F.2d 1312, 1321 (10th Cir. 1992).

Instead, the purpose of the statute is to prevent and remedy discrimination on the basis of race, gender, or other protected status. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335, n. 15 (1977). Plaintiff has simply adduced no evidence tending to show that her treatment by her various supervisors was the product of discrimination.

**Conclusion**

Although Plaintiff may have had legitimate gripes against her supervisors, for various actions taken by them, she has failed to present any evidence indicating she was treated badly because of her race or her gender. Therefore, the Court will grant Defendant's motion for summary judgment and dismiss this case.

Dated this 19th day of April, 2001.

BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
David S. Proffitt, Esq.
6605 Uptown, N.E.,Suite 340
Albuquerque, New Mexico 87110

**For Defendant**:
Sean Olivas
Meghan R. Dimond
Keleher & McLeod, P.A.
P.O. Drawer AA
Albuquerque, New Mexico 87103